IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LOLITA JOHNSON HENLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12-CV-62 |
| | ) | |
| NOVANT HEALTH, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

This matter is before the Court on a motion for summary judgment by defendant Novant Health, Inc. ("Novant"). (Doc. 25.) The plaintiff, Lolita Henley, contends that Novant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981 by discriminating against her because of her race, and she alleges disparate treatment, a racially hostile work environment, and retaliation.

**FACTS**

In addition to the depositions and other evidentiary matters proffered by the parties, the Court has considered the original verified complaint as evidence to the extent the allegations therein are based on personal knowledge and otherwise admissible. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("[A] *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge."). The Court has not so considered the unverified amended complaint. The facts as stated are based on a view of the evidence in the light most favorable to the plaintiff.

Ms. Henley is a registered nurse who began working at Forsyth Memorial Hospital in 2003. In November 2007, Novant hired her to work on its Amalga Project Clinical Improvement Team at Forsyth Memorial Hospital. In February 2008 and again in July 2008, a co-worker made remarks that Ms. Henley, an African-American, considered offensive. Ms. Henley reported the remarks to her supervisor in July, and her supervisor immediately met with the co-worker. When the co-worker made another comment in October 2008 that Ms. Henley found offensive, Ms. Henley immediately reported it and her supervisor immediately had a coaching session with the co-worker. The co-worker also made disparaging racial comments about Mexican, Asian, and Jewish people, though Ms. Henley did not report these to a supervisor.[1] Ms. Henley does not remember the co-worker making any race-related comments between October 2008 and February 2010, (Doc. 25-1 at 29), and indeed at some point, Ms. Henley asked her supervisor to "remove the write up" from her co-worker's file. (Doc. 25-2 at 2.)

In January and early February 2010, Ms. Henley was counseled regarding some performance issues and received a written "coaching and counseling" ("C&C") report. Around this time, a co-worker told Ms. Henley that one of their team members was going to be "blackballed." Shortly thereafter, Ms. Henley overheard several co-workers, including the co-worker who had made the earlier offensive comments in 2008, discussing the side effects of a drug the co-worker had taken during a procedure; during the conversation, the co-worker said the drug could make people "say anything," including cursing or saying racist things. The co-

---

[1] Ms. Henley alleged in her verified complaint that the co-worker also made a disparaging racial statement about President Obama, but Ms. Henley later admitted that she had no personal knowledge of such a statement. (Doc. 32-1 at 4.) The Court will therefore not consider the allegation for purposes of this motion. *See Williams*, 952 F.2d at 823; *Md. Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence . . . cannot be considered on a motion for summary judgment.").

worker expressed concern that she might have said something racist while under the influence of the medicine, and referenced her supervisor's previous instructions not to talk about race. Ms. Henley, who was not a participant in the conversation but overheard part of it from her nearby cubicle, reported the comment, and her supervisor immediately investigated. Around this time, she also experienced excessive criticism from and difficulty in getting along with her co-workers, and she felt that she was being set up to be terminated.

Ms. Henley appealed the C&C report, and it was later withdrawn. Ms. Henley applied for a position in a different Novant department, and she was hired for that position with a pay raise in 2011. (Doc. 25-1 at 51-52.)

## ANALYSIS

1. **DISPARATE TREATMENT**

To make out a prima facie disparate treatment claim in the employment setting, a plaintiff must establish that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she was performing in a manner that satisfied her employer's legitimate job expectations, and (4) the adverse employment action occurred "'under circumstances which give rise to an inference of unlawful discrimination.'" *Jenkins v. Trs. of Sandhills Cmty. Coll.*, 259 F. Supp. 2d 432, 443 (M.D.N.C.) (*quoting EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 851 n.2 (4th Cir. 2001)), *aff'd by* 80 F. App'x 819 (4th Cir. 2003).

An "adverse employment action" is "a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal quotation marks and alterations omitted). Ms. Henley's C&C session was not an adverse employment action. Novant policy expressly dictates, and Ms. Henley understood, that a C&C "is not a step in the progressive discipline process." (Doc. 25-2

at 7.) Even if the C&C were a disciplinary action, disciplinary write-ups or poor performance reviews alone do not rise to the level of an adverse employment action. *See, e.g., James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 377-78 (4th Cir. 2004) (finding a poor performance evaluation actionable only where the employer later uses the evaluation as a basis to detrimentally alter the terms or conditions of employment). Moreover, the C&C was ultimately withdrawn.

Because Ms. Henley has not suffered an adverse employment action, Novant is entitled to summary judgment on this claim.

### 2. HOSTILE WORK ENVIRONMENT

"Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *EEOC v. R&R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986)). To be actionable, the harassing conduct has to be "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive work environment." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir.), *cert. denied*, 132 S. Ct. 398 (2011). In deciding whether conduct is severe or pervasive, "all the circumstances" are relevant, "includ[ing] the frequency of the [harassing] conduct; its severity; whether it is physically threatening or humiliating . . . ; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The evidence must show a "'workplace permeated with discriminatory [e.g., race-based] intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2006) (alteration omitted) (quoting *Harris*, 510 U.S. at 21). "'[S]imple teasing, off-hand comments, and isolated incidents

4

(unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Jordan*, 458 F.3d at 339 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). In order to prevail at trial, the plaintiff must show that she subjectively perceived her environment to be abusive and that a reasonable person in her position would have found the work environment objectively hostile. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).

In this case, there were three comments in 2008 by one co-worker which mentioned race in passing; none of the comments were directly insulting to Ms. Henley and none were physically threatening. There were occasional other comments by that co-worker disparaging racial and ethnic groups to which the plaintiff does not belong. Over a year passed with no remarks or conduct Ms. Henley found objectionable. The 2010 comment was another statement made in passing, and it was not made in Ms. Henley's presence. Even taken together, this is not sufficient to constitute a work environment "permeated with discriminatory intimidation, ridicule, and insult." *See Jordan*, 458 F.3d at 342 (holding that "there is a difference between an isolated racial slur, which is always and everywhere inappropriate, and the sort of severe or pervasive conduct that creates a hostile work environment"). In the absence of evidence of a hostile environment, Novant is entitled to summary judgment on this claim.

### 3. RETALIATION

In the absence of direct evidence of retaliation, an employee can establish a prima facie case of retaliation by demonstrating that she engaged in a protected activity, her employer took an adverse action against her, and the protected conduct was causally connected to the adverse action. *Okoli v. City of Baltimore*, 648 F.3d 216, 223 (4th Cir. 2011). The phrase "adverse employment action" in the retaliation context has a broader meaning than in the disparate

5

treatment context. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 61-67 (2006). The Supreme Court has held that in a retaliation case "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Id.* at 68. Thus, any conduct which might dissuade a reasonable worker from making or supporting a charge of discrimination can constitute retaliation. *Id.* Trivial harms, such as lack of civility, petty slights, or minor annoyances, do not constitute retaliation, even under this relaxed standard. *Id.*

The only actions of record which could possibly constitute retaliation are the coaching and counseling Ms. Henley began receiving in January 2010 for performance issues and a related comment by a co-worker in early February 2010 that one of the team members was going to be "blackballed"; Ms. Henley took this as a warning that she might be fired. (Doc. 29-2 at 4.) Assuming without deciding that this conduct could be retaliatory, Ms. Henley has not shown a causal connection to her complaints about a hostile environment. These events came well over a year after her 2008 complaints concerning a co-worker's comments about race, and before the co-worker's 2010 comment and Ms. Henley's subsequent complaint. Ms. Henley has offered no evidence of any other retaliatory conduct or actions by her co-workers or her supervisors. There is nothing directly or indirectly linking her 2010 job-related problems to her 2008 complaints. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) (noting in gender discrimination retaliation claim that "[a]ction taken (as here) 20 months later suggests, by itself, no causality at all" and that retaliatory conduct must be "very close" in time to the employer learning of the protected activity for temporal proximity to serve as sufficient evidence of causality). Indeed, the circumstantial evidence is to the contrary: Ms. Henley's C&C was ultimately dismissed and she was hired by Novant for a new job with higher pay.

Because Ms. Henley has not offered any evidence of a causal connection between the allegedly retaliatory conduct and her protected activity, her retaliation claim should be dismissed.

## CONCLUSION

The defendant is entitled to summary judgment on all three aspects of Ms. Henley's discrimination claims, for the reasons stated herein.

It is **ORDERED** that Novant's Motion for Summary Judgment, (Doc. 25), is **GRANTED**.

This the 4th day of February, 2013.

_____
UNITED STATES DISTRICT JUDGE

7

Case 1:12-cv-00062-CCE-LPA   Document 34   Filed 02/04/13   Page 7 of 7